UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LILLIE REA AND<br>HILDA WIRATUNGA | CIVIL ACTION |
| VERSUS | NO. 12-1252 |
| WISCONSIN COACH LINES, INC.,<br>ET AL | SECTION "K"(3) |

## ORDER AND REASONS

Before the Court are the following motions:

1) Motion to Exclude or Limit the Testimony of Dr. Cravens (R. Doc. 107) filed by Wisconsin Coach Lines, Inc., Larry Westphal, and Coach Leasing, Inc. ("Defendants");

2) Motion to Exclude or Limit the Testimony of Harold Asher (R. Doc. 105) filed by the Defendants; and

3) Motion to Exclude or Limit the Testimony of Nancy Favaloro (R. Doc. 106) filed by the Defendants.

The Court will address each motion in seriatim. Insofar as the motions to exclude or limit the testimonies of Nancy Favaloro and Harold Asher are based upon facts relevant to the motion to exclude or limit the testimony of Dr. Cravens, the Court will detail necessary background relevant to all three motions.

I.  **Background**

Plaintiff, Lillie Rea, brings this action as a result of alleged injuries she sustained in an automobile accident involving the Defendants in New Orleans, Louisiana, on March 29, 2011. Two days after the accident, the Plaintiff sought treatment from her local primary care physician and underwent an MRI on November 18, 2011. (Pl.'s Mem. Opp. 2, R. Doc. 122). Upon

1

recommendation from her primary care physician, Plaintiff sought consultation with a neurosurgeon in February of 2012 at Ochsner Medical Foundation's Neurosurgery Clinic. On February 9, 2012, Plaintiff underwent a second MRI. On February 15, 2012, upon review of that MRI by Dr. George Cravens, a neurosurgeon at the Neurosurgery Center for Neurological Disorders, P.A., in Fort Worth, Texas, and a family friend of the Plaintiff's mother, Dr. Cravens wrote to the Plaintiff's primary physician stating that he believed the Plaintiff would need cervical surgery and potentially a microdiscectomy. (Cravens Letter, Ex. C, R. Doc. 122). Dr. Cravens performed an anterior cervical discectomy and fusion surgery on the Plaintiff on March 8, 2012. Including the Plaintiff's post-operative visit in late March of 2012, the Plaintiff was treated by Dr. Cravens on three occasions. Following her surgery, the Plaintiff underwent physical therapy.

The Plaintiff filed the instant suit on March 23, 2012, and Defendants removed the action on May 15, 2012. In relation to litigation, the parties deposed Dr. Cravens on October 23, 2013, wherein he stated that he did not believe the Plaintiff required surgery at that point in time and that, while he could not anticipate what might happen two to three years in the future, he did not anticipate any follow-up surgery. (Cravens Dep. 35:7-19; 35:20-36:4, Oct. 23, 2013, Ex. 5, R. Doc. 107). On December 4, 2013, in a follow-up evaluation letter (unaddressed), Dr. Cravens stated that, in his opinion, despite the Plaintiff's ongoing physical therapy she "may ultimately require further surgery in the future." (Cravens Letter Dec. 4, 2013, Ex D, 1, R. Doc. 122).

On May 15, 2014, Dr. Cravens executed an affidavit in light of the up-coming trial date of July 7, 2014. (Cravens Aff., Ex. E, R. Doc. 122). In his affidavit, Dr. Cravens opines: "It is my opinion, within reasonable medical probability, that Lillie Rea's neck and back injuries were caused by the auto crash of March 29, 2011, so it can be said that but for this auto crash, she

2

would not have incurred these injuries or required surgery." (Cravens Aff. ¶ 4). He further opines that "It is my opinion that, within reasonable medical probability, Rea will require two future surgeries to resolve these spinal changes; she will require two cervical discectomies with fusions. . . . [and] two lumbar discectomies with fusions for the herniated nucleus pulposus at L5-S1." *Id.* at ¶¶ 8-9. Further, Dr. Cravens states that the Plaintiff will likely have continuing episodes of occasional pain related to the injury for the duration of her life and will require a series of "epidural steroid injections for both the cervical and lumbar areas." *Id.* at ¶10. Dr. Cravens' affidavit also noted that he would be available for deposition before trial or to testify at trial if required. *Id.* at ¶ 12.

On July 25, 2014, the parties deposed Dr. Cravens for a second time. According to his deposition testimony, the affidavit was prepared by the Plaintiffs' attorney, and Dr. Cravens signed the affidavit upon review. (Cravens Dep. 10:16-25, July 25, 2014). Dr. Cravens also testified that although he reviewed medical records presented to him while the Plaintiff was undergoing physical therapy, he could not recollect any details about the records. (Def.'s Mem. Supp. Mot. Exclude Cravens Testimony 6, R. Doc. 107). Dr. Cravens' agreed in his deposition that the discharge note dated November 13, 2013 indicated that the physical therapist recommended discharge of the patient signifying that there was improvement in the Plaintiff's symptoms. (*Id.* at 6-7; Cravens Dep.12:3-14:25, July 25, 2014).

Though Defendants filed a motion in limine seeking to exclude or limit Dr. Cravens' affidavit and any testimony relying upon it shortly after it was filed, the Court ordered any such motions to be re-filed subsequent to a second deposition of Dr. Cravens addressing his opinions presented in the affidavit. (*See* Minute Entry, May 23, 2014, R. Doc. 66; Order, May 27, 2014, R. Doc. 65). Defendants filed the instant motion to exclude or limit the testimony of Dr.

Cravens' after having deposed him for a second time. Defendants also filed motions to limit or exclude testimony of Plaintiff's vocational rehabilitation expert, Nancy Favaloro, and economist, Harold Asher, with respect to any testimony based upon the opinions expressed in Dr. Cravens' 2014 affidavit.

**II.     Legal Standard**

Federal Rule of Civil Procedure 26 requires parties "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Rule 26 categorizes these witnesses for purposes of disclosure requirements into those expert witnesses who are retained or specially employed to give expert testimony and those who are not retained or specially employed but may provide expert testimony. *See* Fed. R. Civ. P. 26(a)(2)(A), (C); Advisory Comm. Note 2010.

Experts retained by the party must provide an expert report pursuant to section (a)(2)(B). As to non-retained expert witnesses, prior to 2010 those witnesses (e.g., treating physicians) were exempt from disclosure requirements under Rule 26(a)(2)(B), but under the "treating physician exception" were allowed to testify as to those facts related to the medical records and treatment. *See Perdomo v. United States,* 2012 WL 2138106 at *1 (E.D.La. 2012); *Morgan v. Chet Morrison Contractors, Inc.*, 2008 WL 7602163 at *1 (E.D.La. 2008). A number of courts determined that a treating physician may offer testimony as a non-retained expert if the testimony is confined to those facts or data the physician learned during actual treatment of the plaintiff. *Morgan,* 2008 WL 7602163 at * 2, *Perdomo* 2012 WL 2138106 at *4, *LaShip, LLC, Hayward Baker, Inc.*, 296 F.R.D. 475, 480 (E.D.La. 2013); *Kim v. Time Ins. Co.,* 267 F.R.D. 499, 502 (S.D.Tex. 2008). On the other hand, where testimony "consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were

formed during the scope of interaction with a party prior to litigation," the testimony is rather that of an expert. *Musser v. Gentiva Health Servs.,* 356 F.3d 751, 757 n.2 (7th Cir. 2004)(citation omitted). For example, testimony as to causation or as to future medical treatment has been considered the province of expert testimony subject to the requirements of section (a)(2)(B).[1] In addition, where physicians' testimony was prepared in anticipation of litigation by the attorney or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like an expert and must submit a report under Rule 26(a)(2)(B).[2]

Since Congress amended Rule 26 in 2010, however, Rule 26(a)(2)(C) creates a separate requirement that expert witnesses who do not provide a written report, such as treating physicians, must submit a disclosure stating (i) the subject matter on which the witness is expected to testify under Federal Rules of Evidence 702, 703, and 704, and (ii) the facts and opinions to which the witness is expected to testify.[3] The 2010 Advisory Committee Notes specifically address treating physicians, and have lead courts to the conclusion that any testimony not contained in medical records is more aptly considered expert testimony and

---

[1] *See, e.g.*, *Martin v. Nabors Offshore Corp.,* 2002 WL 34359734 (E.D. La. 2002) (no basis for testimony as to future medical treatment); *Goodman v. Staples The Office Superstore, LLC,* 644 F.3d 817, 825-26 (9th Cir. 2011) (noting that other courts have considered causation testimony as outside the scope of treating physicians'); *Carrillo v. B & J Andrews Enterprises, LLC*, 2013 WL 394207 (D. Nev. 2013) (suggesting that causation and future medical care were topics of testimony not within the course of treatment of a treating physician); *Wilburn v. Maritrans GP Inc.,* 139 F.3d 350, 356 (3d Cir. 1998) ("The essential difference between [Rule 701 and 702 testimony] ... is that a qualified expert may answer hypothetical questions.")

[2] *See LaShip,* 296 F.R.D. at 480 (noting that cases discussing Rule 26(a)(2)(C) distinguish between opinions arrived at during the course of treatment and those arrived at after for purposes of litigation); *Fielden v. CSX Transportation, Inc.,* 482 F.3d 866, 871 (6th Cir. 2007) (holding that physician did not have to produce report where physician formed opinion during course of treatment); *Goodman*, 644 F.3d at 826 (holding that physicians opinions produced after reviewing information provided by plaintiff's attorney that they had not reviewed during the course of treatment fell outside the scope of the treating physician exception).

[3] Fed. R. Civ. P. 26(a)(2)(C); *see Perdomo,* 2012 WL 2138106 at *1; *Boudreaux v. Ace American Ins. Co.*, 2013 WL 3440027 at *1, *3 (E.D.La. 2013); Fed. R. Civ. P. 26(a)(2)(B) Advisory Committee Note ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.").

5

subject to disclosure under section (a)(2)(C). *See Perdomo,* 2012 WL 2138106 at *1; *Boudreaux* 2013 WL 3440027 at *3.

Failure to comply with the deadline for disclosure requirements results in "mandatory and automatic" exclusion under Federal Rules of Civil Procedure Rule 37(c)(1), and the party is not allowed to use "that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *Red Dot Bldgs. v. Jacob Technology, Inc.,* 2012 WL 2061904, at *3 (E.D. La. 2012); *see also Lampe Berger USA, Inc. v. Scentier, Inc.,* 2008 WL 3386716, at *2 (M.D.La. 2008). Courts evaluate four factors to assess the nature of the omission in deciding whether to strike the testimony: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

If the expert testimony is properly disclosed, the testimony must also be determined to be admissible under Federal Rules of Evidence Rule 702. The trial court has considerable discretion in admitting or excluding expert testimony under the Federal Rules of Evidence. *Watkins v. Telsmith, Inc.,* 121 F.3d 984, 988 (5th Cir. 1997). The Supreme Court further expounded upon Rule 702, requiring the district court act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 589 (1993). The court must analyze these two prongs of reliability and relevance, as Fifth Circuit has described:

> The reliability prong mandates that expert opinion "be grounded in the methods and procedures of science and ... be more than unsupported speculation or subjective belief." *Id.* (citing *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786); *see also Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir.1998) (en banc) ("[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and

> conclusions are based on the scientific method, and, therefore, are reliable."). The relevance prong requires the proponent to demonstrate that the expert's "reasoning or methodology can be properly applied to the facts in issue." *Curtis,* 174 F.3d at 668 (citing *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786).

*Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The party offering the testimony must prove by a preponderance of the evidence that the testimony is reliable. *Id.*

### III. Motion to Exclude or Limit the Testimony of Dr. Cravens

Defendants, Larry Westphal and Coach Leasing, Inc., seek to exclude or limit the testimony expected to be offered by Plaintiff's witness, Dr. George Cravens, as to the Plaintiff's need for future medical care—specifically that the Plaintiff will require four additional surgeries. (Def. Mem. 1). Furthermore, the Defendants argue that Dr. Cravens is "not a treating physician with respect to Plaintiff's ongoing or future treatment" as he only treated the Plaintiff three times over one week in March of 2012. *Id.* at 13. Alternatively, Defendants contend that if Dr. Cravens can be considered a treating physician as to the testimony in his affidavit that Dr. Cravens' affidavit is not a sufficient Rule 26(a)(2)(C) disclosure as it does not possess any facts upon which to base his recommendations. *Id.* at 14. Moreover, they argue that the deadline for such a disclosure has passed and that the testimony should be excluded. *Id.* at 15. In sum, Defendants contend that whether Dr. Cravens is considered a treating physician or an expert subject to Rule 26(a)(2)(B), his proposed testimony should be limited.

In addition, the Defendants argue that Dr. Cravens' testimony is not sufficient under Federal Rule of Evidence 702 or the *Daubert* standard. Defendants claim that Dr. Cravens' testimony regarding the Plaintiff's future care is "not based on clinical treatment or medical records" and thus is "not based on sufficient facts or data, nor is it the product of reliable principles" satisfying Federal Rule of Evidence 702 and the *Daubert* standard. Specifically, the

7

Defendants contend that Dr. Cravens' testimony is unreliable because Dr. Cravens did not review any new relevant information regarding the Plaintiff, nor examine the Plaintiff before making a recommendation that the Plaintiff would require four additional surgeries in the future. (Def. Mem. 12). They state that Dr. Cravens provided no peer studies or other information to suggest that his opinions are based on reliable methods. *Id.* Ultimately, the crux of the Defendants argument is that Dr. Cravens' new opinion is not based on sufficient facts or data so as to be reliable. (Def. Reply 5, R. Doc. 133).

Plaintiff responds in her Opposition by arguing that the Dr. Cravens' testimony is reliable and that he indeed was a treating physician of the Plaintiff. (Pl.'s Mem. Opp. 6). While Plaintiff contends that the Defendants do not show that Dr. Cravens did *not* review any new information between his October 2013 deposition and his May 2014 affidavit, Plaintiff likewise offers no evidence of what records Dr. Cravens may have reviewed. Nevertheless, Plaintiff states that Dr. Cravens gave "many statements which outline the basis for his medical opinions, including review of [the Plaintiff's] on-going physical therapy and treatment for her symptoms." *Id.* at 8. In addition to her first point, the Plaintiff notes that, in asserting that Dr. Cravens was not the Plaintiff's treating physician, the Defendants do not put forth any evidence or testimony necessary to establish the appropriate frequency of contact required to meet the accepted medical practice for the Plaintiff's condition and treatment. Thus, Dr. Cravens should be considered a treating physician who made the requisite disclosure in his affidavit.

Defendants argue that Dr. Cravens should not be considered the Plaintiff's treating physician as to her "ongoing or future treatment," as Dr. Cravens has not treated the Plaintiff since 2012. Defendants cite to *McTaggart v. Astrue,* 342 Fed. Appx. 373 (10th Cir. 2009), a social security disability benefits case, applying social security regulations that define specific

factors the administrative law judge examines when considering the weight that must be given to the treating physician who benefits from the "treating physician rule."[4] Here, whether Dr. Cravens is a treating physician implicates disclosure requirements under Federal Rule of Civil Procedure Rule 26 and the more limited scope of testimony allowed for treating physicians. Defendants clearly do not dispute that Dr. Cravens treated the Plaintiff at some point in time but wish to limit his testimony based on the infrequency of his treatment corresponding to the time at which his affidavit was filed. It is this Court's opinion that, while infrequent treatments may render the opinion unreliable, the Defendants have not shown that the frequency of treatment would not qualify Dr. Cravens as a treating physician in this case, a distinct issue.

Turning to the substance of the affidavit itself, the question is whether Plaintiff has met the disclosure requirement for such an expert and whether the testimony offered falls within the scope of treating physicians' testimony. Here, Dr. Cravens' affidavit does not comply with the disclosure requirements of Rule 26(a)(2)(C). While Dr. Cravens' opinion is clear, it is unclear what facts or data support that opinion or conclusion, an element required by Rule 702 of the Federal Rules of Evidence or Rule 26(a)(2)(C). The Court notes that, while courts "must take care against requiring undue detail" in Rule 26(a)(2)(C) disclosures, Adv. Comm. Notes to 2010 Amendments, the "summary" disclosure should at the very least an "abstract, abridgement, or compendium" of the opinion *and* facts supporting the opinion. *See Carrillo v. B & J Andrews Enterprises, LLC*, 2013 WL 394207 *6 (D. Nev. 2013)(quoting *Kristensen ex rel. Kristensen*, 2011 WL 5320686 *2 (W.D.Va. 2011)). Despite taking Dr. Cravens' second deposition

---

[4] The "treating physician exception" provides that "the opinion of a treating physician is generally entitled to more weight than that of a non-treating physician." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981). The Fifth Circuit and district courts have recognized the use of the rule in cases involving termination of social security benefits and suits brought under the Federal Torts Claims Act. *See, e.g., Babineaux v. Heckler,* 743 F.2d 1065, 1068 (5th Cir.1984); *Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1987) (social security); *Curtis v. Shivers,* 674 F.Supp. 1237, 1240 (E.D.La.1987)(Federal Torts Claims Act). But the Fifth Circuit declined to apply the rule to a child's treating physician's testimony regarding proper education for the handicapped child. *Christopher M. v. Corpus Christi Indep. School Dist.,* 933 F.2d 1285, 1292 (5th Cir.1991).

subsequent to the affidavit, the Plaintiff still offers no evidence of what Dr. Cravens relied upon in making his new assessment. Ultimately, this failure to disclose the facts that support his opinion is not sufficient for purposes of Rule 26(a)(2)(C).

In addition, the substance of the testimony pertains to matters beyond the medical records, including causation and the need for future medical care. While Dr. Cravens allegedly spoke with the Plaintiff or her family members on the phone, he did not examine the Plaintiff or review any records other than physical therapy records before making his new surgery recommendation in the affidavit. Dr. Cravens' opinion evidently stems not from his treatment but from his scientific knowledge of conditions like the Plaintiffs'; furthermore, the affidavit itself was prepared in anticipation of litigation by the Plaintiffs' attorney.[5] The testimony presented by the affidavit arguably is expert testimony subject to the disclosure requirement of Rule 26(a)(2)(B),[6] but no expert report has been filed. Notwithstanding, the affidavit fails to provide even the most general information about the facts supporting Dr. Cravens' opinion thus failing to meet the requirement of the limited amount of information required by Rule 26(a)(2)(C).

Under Rule 37(c)(1) and the four-prong analysis, the Plaintiff does not provide any ascertainable reason for delay in failing to identify Dr. Cravens' expert testimony. Having been deposed in 2013, the parties cannot suggest any surprise in being notified that the witness, himself, might testify; however, the affidavit with entirely new and significant testimony was filed only two months before the then-scheduled trial. The Court granted a continuance and ordered pending motions in limine re-filed upon the taking of Dr. Cravens' second deposition in

---

[5] See *supra* note 1 discussing cases disallowing similar types of testimony not disclosed under Rule 26(a)(2)(C), particularly where prepared in anticipation of litigation.
[6] *See Martin*, 2002 WL 34359734 ("However, when the physician's proposed opinion testimony extends beyond the facts made known to him during the course of the care and treatment of the patient and the witness is specially retained to develop specific opinion testimony, he becomes subject to the provisions of Fed.R.Civ.P. 26(a)(2)(B).")

order to cure any defect in the testimony. However, upon examination of the instant motions, it appears that the Plaintiff cannot account for the facts and data upon which Dr. Cravens bases his opinion. Upon these grounds alone, the Court may strike any portion of the affidavit for failing to disclose before the expert deadline. *See Sturgeon v. ABF Freight Systems, Inc.*, 2004 WL 5872664, at *3 (D. New Mexico 2004)(striking portions of plaintiff's affidavit that were beyond scope of treating physician for failure to meet Rule 26(a)(2) disclosure deadline and allowing testimony only as to personal care and treatment of plaintiff during that time period).

As a result of the lack of sufficient facts and data, Dr. Cravens' testimony also fails to meet the standard required by Rule 702 and *Daubert*. His opinion as expressed in the affidavit as to the cause and the need for four additional surgeries, unsupported by sufficient facts and data, lacks the foundation and reliability necessary to support expert testimony. The Court notes that while courts should not be lured by arguments challenging the weight of expert testimony rather than admissibility, the Court must also not allow expert testimony that is so fundamentally unsupported that it cannot possibly help the factfinder. *See Vitterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

In sum, the Court finds that Dr. Cravens may testify as to those opinions established by the Plaintiff's medical records during the course of treatment such as, for example, Dr. Cravens' opinion after examining one of Plaintiff's MRI scans that there was "evidence of disc pathology of L5-S1 slightly lateralizing to the left" as described in his letter to one of Plaintiff's other physicians. (Cravens Letter Feb. 15, 2012, Ex. C, R. Doc. 122). However, for the reasons stated, the Court will exclude Dr. Cravens 2014 affidavit. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Exclude or Limit Testimony of Dr. Cravens (R. Doc. 107) is **GRANTED**.

## IV. Motion to Exclude or Limit the Testimony of Nancy Favaloro

Nancy Favaloro, Plaintiff's vocational rehabilitation expert, submitted an expert report indicating the Plaintiff's future medical costs based on Dr. Cravens' opinion in his affidavit that the Plaintiff would require four additional surgeries. For the reasons stated above, Dr. Cravens' opinion as expressed in his 2014 affidavit has been excluded. Thus, to the extent that any of Ms. Favaloro's testimony relies on Dr. Cravens' opinion as expressed in the affidavit, the Court finds that such testimony is unreliable and unhelpful to the factfinder.

Defendants also argue that Ms. Favaloro's testimony as to the Plaintiff's ability to work a full 40-hour work week is unsupported as recent deposition testimony of the Plaintiff's mother indicates that she has recently worked full-time. However, the Court finds that such objections are more properly addressed through cross-examination and bear upon the weight of the expert's testimony rather than admissibility. Thus, the Court will not limit testimony as to this point.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Exclude or Limit the testimony of Nancy Favaloro (R. Doc. 106) is **GRANTED** in part and **DENIED** in part.

## V. Motion to Exclude or Limit the Testimony of Harold Asher

Finally, Defendants argue that the testimony of Plaintiff's economist, Harold Asher, should be limited to the extent that his opinion on future medical expenses relied on information provided by Ms. Favaloro, who based her opinion on that of Dr. Cravens' affidavit. Further, the Defendants argue that Mr. Asher should be precluded from offering information as to the Plaintiffs' earnings capacity as Plaintiff is not making an earnings capacity claim and Mr. Asher has not timely offered any opinion as to the value of such claim.

Adopting the reasoning above, any testimony based on Ms. Favaloro's now-excluded testimony shall also be excluded. In Mr. Asher's report, he states that "[w]e reserve the right to amend this report should additional relevant information come to our attention or if you request that we determine Ms. Rea's lost earning capacity in this matter." (Ex 7, 2; R. Doc. 105).

Because expert report deadlines have already passed, and opportunity to amend or supplement the report may have also passed. Federal Rule of Civil Procedure Rule 26(e) provides:

> **(e) Supplementing Disclosures and Responses.**
>
> **(1) *In General.*** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> **(B)** as ordered by the court.
> **(2) *Expert Witness.*** For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

As discussed above, in determining whether to admit late-filed expert reports or supplemental disclosures, the court considers a four-prong analysis. *See Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998). Here, Plaintiff has had ample time to garner her economist's expert testimony as to her loss of earning capacity. No explanation is offered as to why the Plaintiff has not offered any supplemental report with a loss earning capacity calculation by Mr. Asher. Plaintiff simply states that "[a]t this stage of the proceedings,

13

it is not known for certain whether evidence will be adduced at trial to support Asher's assumptions. . . . [but i]f at trial, no evidence is adduced to support Asher's assumptions, then the court can consider excluding his testimony at that time." (Pl.'s Mem. Opp. 20, R. Doc. 121). Nevertheless, the testimony of an economist as to the amount of lost earning capacity, while not necessary to establish a claim as to earning capacity, may bolster with credible analysis the Plaintiff's loss of earning capacity. Although the Plaintiff has not requested that such supplemental report be made, in an effort to facilitate litigation, the Court will allow Plaintiff to offer a supplemental report from Mr. Asher as to the Plaintiff's loss of earning capacity with the provision that no testimony be based upon the excluded affidavit of Dr. Cravens.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Exclude or Limit the testimony of Harold Asher (R. Doc. 105) is **GRANTED**.

**IT IS FURTHER ORDERED** that, in the event Plaintiff seeks to supplement the report by Mr. Asher with his opinion as to loss of earning capacity, she may do so **January 9, 2015**.

New Orleans, Louisiana, this 3rd day of October, 2014.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**