UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LILLIE REA AND** | **CIVIL ACTION** |
| **HILDA WIRATUNGA** | |
| **VERSUS** | **NO. 12-1252** |
| **WISCONSIN COACH LINES, INC.,** | |
| **ET AL** | **SECTION "K"(3)** |

### ORDER and REASONS

Before the Court are various motions in limine regarding trial exhibits and testimony filed by Plaintiff, Lillie Rea, and Defendants, Wisconsin Coach Lines, Inc., Larry Westphal, and Coach Leasing, Inc. (collectively "Defendants"). (R. Docs. 181-82; 185, 188-89; 195-96).  The Court has reviewed the motions, memoranda, exhibits, record, and relevant law, and makes the following rulings regarding each motion in limine.

**I.   Defendants' Motions in Limine**

    **A.   Motion in Limine to Exclude Evidence and Testimony Regarding Surgical Procedures Video (R. Doc. 181)**

Defendant moves to exclude evidence or testimony related to any video depictions of the surgical procedures of Plaintiff, Lillie Rea, at trial, arguing that it is unfairly prejudicial to Defendants, misleading to the jury, and a needless presentation of cumulative evidence under Rule 403 of the Federal Rules of Evidence.  Specifically, Defendants contest the admissibility of Plaintiff's Exhibit 82, a videotape of the Plaintiff's cervical fusion surgery performed by Dr. George Cravens on March 8, 2012 in Fort Worth, Texas.  Defendants argue that any probative value is outweighed by the danger of unfair prejudice.

"Whether to admit and permit the showing of a [video] ... is within the sound and broad discretion of the district court." *Johnson v. William C. Ellis & Sons Iron Works, Inc.,* 604 F.2d

1

950, 958 (5th Cir.1979).  The video may be relevant if it has any tendency to make a fact more or less probable than it would be without the evidence or if the fact it seeks to prove is of consequence in determining the action.  Fed. R. Evid. 401.  While all relevant evidence is admissible, the court may exclude relevant evidence if its probative value is substantially outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." *United States v. Jackson*, 339 F.3d 349, 356 (5th Cir. 2003) (citing *Old Chief v. United States,* 519 U.S. 172, 184, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).

     Weighing the probative value of the evidence against the danger of unfair prejudice to the Defendants, the Court finds that the probative value of the evidence is outweighed by the danger of unfair prejudice and presenting needlessly cumulative evidence.  The 50-minute long surgical video graphically depicts the limited surgical site and shows the installation of metal bracket and screws in the neck of the patient as well as use and removal of packing material from the wound. Standing alone, the video has little probative value to a jury untrained in the field of medicine. Assuming the video is authenticated by Dr. Cravens, the testimony offered by Dr. Cravens as to the facts surrounding the surgery he performed on the Plaintiff would be duplicative and cumulative. More importantly, the graphic nature of the video is unfairly prejudicial. To be unfairly prejudicial, evidence need be more than simply adverse to the opposing party; the evidence must have "an undue tendency to suggest (a) decision on an improper basis, commonly, though not necessarily, an emotional one." *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1155 (5th Cir. 1981). A lengthy surgical video exposing muscle, skin, and drilling into spinal vertebrae

is likely to evoke a strong emotional response or inflame the jury, eclipsing any value or relevance in establishing that fact the surgery occurred. *See Regan v. Starcraft Marine LLC*, No. CIV.A. 06-1257, 2010 WL 2817289, at *1 (W.D. La. July 16, 2010)(finding graphic video of wound care with exposed calf muscle and skin unfairly prejudicial); *Malbrough v. Wallace*, 594 So. 2d 428, 432 (La. Ct. App. 1991) *writ denied*, 596 So. 2d 196 (La. 1992) *abrogated on other grounds by Ibrahim v. Hawkins*, 2002-0350 (La. App. 1 Cir. 2/14/03), 845 So. 2d 471 (La. Ct. App. 2003)(finding 55-minute surgical video unfairly prejudicial and cumulative). Thus, the Court grants the Defendants' motion to exclude Plaintiff's Exhibit 82.

    B.  **Motion in Limine to Exclude Plaintiff's Evidentiary Exhibits (R. Doc. 182)**

In this motion, Defendants seek to exclude a number of Plaintiffs exhibits; the Court has previously ruled on many of these, as stated in the Pretrial Minute Entry of March 2, 2015. (R. Doc. 222). The Court now turns to the remainder of the Defendants' objections.

Defendants object to Plaintiff's Exhibit 42, containing bills from GR Group HSO for physical therapy, arguing that the evidence lacks foundation and relevance and assert that Plaintiff has not identified any records relating to such bills from GR Group in her exhibit list. Thus, she cannot lay a foundation as to what the bills are purportedly related to or prove the relevance of the records in the proceeding. The Court disagrees. So long as the Plaintiff lays a foundation at trial and demonstrates relevance, the Court declines to exclude this evidence at this time.

Defendants also object to the Plaintiff's use of an illustration of a cervical fusion, Plaintiff's Exhibit 75, as the author of the illustration is not identified and thus the authenticity of the illustration cannot be established. Further, the Defendants argue that the "graphic" images in the illustration are unfairly prejudicial and substantially outweigh any probative value under

Federal Rule of Evidence 403. The Court finds that the image does not display any visceral image such that the image becomes unfairly prejudicial. To the extent the illustration may be used by Dr. Cravens when giving his testimony about the surgery, the minimal probative value lies in the ability to accurately depict the facts of the surgery Dr. Cravens performed on the Plaintiff. Thus, to the extent that Plaintiff can meet the requirements of the learned treatise hearsay exception under Federal Rule of Evidence 803(18), the Plaintiff may use the evidence for this limited purpose under that rule. *See United States v. Norman*, 415 F.3d 466, 473 (5th Cir. 2005).

Defendants object to the use of the police report and testimony of Officer Alan Seaton, which is the subject of a later-filed motion in limine and will be addressed below.

C.     **Motion in Limine to Exclude Evidence and Testimony of Officer Alan Seaton and Accident Report (R. Doc. 185)**

In their motion, Defendants seek to exclude the testimony of Officer Alan Seaton, who responded to the accident which is the subject of this litigation, and to exclude the uniform motor vehicle crash report prepared by Officer Seaton on March 29, 2011. In his deposition, Officer Seaton states that has had no formal accident reconstruction training and that he had only been working on patrol without supervision for less than two months prior to the March 29, 2011 accident. Seaton Dep., R. Doc. 185, Ex. A, 12. Officer Seaton also did not witness the accident—the vehicles had been moved post-impact by the time he arrived on scene—nor did he interview any independent witnesses or ask either party to the accident to prepare a written statement. Seaton Dep., R. Doc. 185, Ex. A, 13-17.

4

Federal Rule of Evidence 701, which governs lay opinions, provides that such opinions are admissible when they are "(1) rationally based on the perception of the witness, (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The Fifth Circuit has held that "lay opinion expresses a conclusion drawn from observations in circumstances where it is impractical, if possible at all, to recount the observed 'factual' components of the opinion. The common illustrations are an expression of opinion by a lay observer of a car's speed or a person's expression or emotional state." *United States v. Carlock,* 806 F.2d 535, 548 (5th Cir.1986). Rule 701 permits lay opinion testimony regarding determinations of fact, not mixed questions of law and fact, such as the question of whether a party acted negligently. *Brossette v. Swift Transp. Co.,* No. CIV.A. 07-0888, 2008 WL 4809411, at *8 (W.D. La. Oct. 29, 2008). Thus, as a general rule, police officers' lay "opinions as to the cause of an automobile accident formed by viewing subsequent evidence at the scene" are excluded under Rule 701. *Duhon v. Marceaux*, 33 F. App'x 703 (5th Cir. 2002); *see Bowie v. Am. Home Assur. Co.,* No. CIV.A. 05-1381-JJB, 2009 WL 960202, at *2-3 (M.D. La. Apr. 7, 2009).

Because Officer Seaton has not been trained in accident reconstruction nor has any party qualified Officer Seaton as an expert, the Court considers the admissibility of Officer Seaton's testimony under Federal Rule of Evidence 701. Under Rule 701, Officer Seaton may testify to any facts or what he perceived when he arrived at the accident scene; however, any testimony based on his interpretation as to cause of the accident and reconstruction of the accident scene based upon others' accounts of the events is properly excluded.

As to Officer Seaton's police report, the report may be admissible based upon the public records exception to the hearsay rule in Federal Rule of Evidence 803(8). *See Reliastar Life Ins. Co. v. Thompson*, No. CIV. M-07-140, 2008 WL 4327259, at *4 (S.D. Tex. Sept. 16, 2008). Reports of this type are admissible unless sources of information or other circumstances indicate a lack of trustworthiness. Fed. R. Evid. 803(8)(B). In the Fifth Circuit, Rule 803(8)(B) reports are presumed to be trustworthy and admissible; therefore, it is the burden of the party opposing admission to demonstrate a lack of trustworthiness. *Moss v. Ole South Real Estate, Inc.,* 933 F.2d 1300, 1305 (5th Cir.1991). The trustworthiness of an 803(8)(B) report is dependent on whether "the report was compiled or prepared in a way that indicates that its conclusions can be relied upon." *Id.* at 1307. The determination of trustworthiness focuses on the "methodology behind the report" not credibility. *Id.* at 1307-08. Factors aiding the determination of trustworthiness include (1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivation problems [within the reporting entity]." *Id.* at 1305 (citing Advisory Committee Notes, Fed. R. Evid. 803(8)(C)). Complaints that untrustworthiness stems from the report's inaccuracy or incompleteness go toward the weight of the evidence and not its admissibility and should not be a factor in the determination. *Id.* at 1307.

If the report is trustworthy, the first-hand observations of the police officers which are incorporated in the report are admissible. *Reliastar,* 2008 WL 4327259, at *4; *Harris v. Browning–Ferris Indus. Chem. Servs., Inc.,* 635 F.Supp. 1202, 1209 (M.D.La.1986), *aff'd,* 806 F.2d 259 (5th Cir.1986). However, any witness statements contained in the report offered to prove the truth of the matter asserted are inadmissible "hearsay within hearsay," unless each level of hearsay qualifies under one of the hearsay exceptions. Fed. R. Evid. 805; *see Reliastar,*

2008 WL 4327259, at *4. Moreover, "an investigatory report's conclusions are not binding on the fact finder and may be disregarded." *Reliastar,* 2008 WL 4327259, at *4; *see Mac Towing, Inc. v. Am. Commercial lines,* 670 F.2d 543, 547 (5th Cir. 1982); *Moss,* 933 F.2d at 1308; *Letsinger v. Stennette*, No. 5:12-CV-2444, 2014 WL 4809814, at *4 (W.D. La. Sept. 26, 2014)(opinions and conclusions of an officer as they relate to the accident are not permitted).

     Defendants argue that Officer Seaton lacks any personal knowledge as to the facts of the accident and based his conclusions on statements of the parties and that Officer Seaton's report contains factual inaccuracies, specifically also the location of the accident and direction the parties were travelling prior to the accident. Officer Seaton's uniform motor vehicle crash report contains a check-list of information about the conditions and contributing factors as well as the officer's narrative describing any unusual circumstances surrounding the accident and a diagram of the accident. While Officer Seaton did not interview witnesses other than the parties, not all of the report requires this type of investigation. The data recorded in the check-list may be prepared by observing the surrounding circumstances of the accident. Defendants argue that even here, the Officer's report is untrustworthy and offers an interpretation of the witness's statements; yet this logic would foreclose any conclusion of trustworthiness as to nearly any accident report where the officer interviews the parties and does not personally view the accident. Thus, as to this information, Officer Seaton's methodology in this instance was trustworthy, and, as a record of his first-hand account, is admissible. However, Officer Seaton's conclusions are reflected in the diagram or drawing of the vehicle positions, unlike his recordation of information, the Court finds unfairly prejudicial under Federal Rule of Evidence 403. Unlike the information contained in the check-list, as no other witness statements, drawings, or other renditions of the accident in form of diagram will be offered, the prejudicial effect of any factual inaccuracy outweighs any

7

probative value of the diagram. Finally, the sub-section entitled "Violation" under the "Contributing Factors and Conditions" section is also inadmissible, pursuant to the Court's prior exclusion of any reference to the traffic citation issued in this matter. *See* Order, R. Docs. 103, 152. Thus, the diagram portion of the report and specific sections discussed above shall be redacted before the report may be introduced into evidence.

Officer Seaton's narrative also records witness statements from Defendant Larry Westphal and Plaintiff Lillie Rea.  Though typically witness statements would be hearsay within hearsay and inadmissible, both statements here meet another hearsay exception; because these statements are offered against an opposing party and were made in the Plaintiff's and Defendant's individual capacity respectively. Fed.R.Evid. 801(d)(2)(A); s*ee Letsinger*, 2014 WL 4809814, at *4. Thus, the Officer's narrative portion containing his recordation of these statements shall be admitted.

**II.     Plaintiff's Motions in Limine**

**A.     Motion in Limine to Exclude All Electronic Evidence For Which Authenticity Has Not Been Established (R. Doc. 188), and Motion in Limine to Facebook Postings Defendant Exhibits 46, 48, 54, 57, 65, 67, 70, 71, 77, 83, 84, 85, and 89 (R. Doc. 195)**

In Plaintiff's first motion, Plaintiff seeks to exclude "evidence and/or testimony regarding any and all electronic communications that have not been properly authenticated under the Federal Rules of Evidence." R. Doc. 188, 1. Plaintiff's motion encompass various exhibits that "include several Instagram, facebook, and other internet posting." R. Doc. 188, 2. Plaintiff further asserts that these unauthenticated postings are also "grossly irrelevant" and, even if relevant, are unfairly prejudicial to the Plaintiff. In the latter motion, Plaintiff specifically seeks to exclude evidence of various Facebook postings from "Plaintiff's corporate Facebook page and

the pages of several other individuals," R. Doc. 195 at 1, as she asserts that the photographs have no probative value and will be misleading to the jury. R. Doc. 195, 1.

In response, Defendants argue that, as to Plaintiff's first motion, the exhibits are relevant and the "prejudicial value does not outweigh the probative value and are authentic and admissible." Defendants assert that the photographs showing Plaintiff's general "enjoyment of life" are relevant as they contradict her representation that she suffers from her injury following the accident. As to the photos specifically subject to Plaintiff's second motion, Defendants assert that these photos were taken during business hours when Plaintiff has indicated that she was unable to perform work. R. Doc. 216, 2. Defendants also flatly state that the photographs are not prejudicial and that the exhibits may be authenticated by simply providing a witness to qualify the photograph. R. Doc., 217, 2. Further, Defendants note that Plaintiff's motion fails to comply with the Court's pre-trial notice and order by failing to identify the exhibits to which it refers, and that "[t]herefore, the motion creates an undue burden at the 11th hour before trial by having Defendants guess as to which exhibits Plaintiff objects to as relevant, unduly prejudicial and are not authentic as to the reasons thereof." R. Doc. 217, 1.

The Court, in the eleventh hour before trial, has thus attempted to guess as to what part of these voluminous exhibits, one of which contains over 700 pages of photos and attached commentary from social media sites, the Defendants intend to introduce at trial. The Court agrees that the authenticity of the photographs may be established without issue through the cooperation of a testifying witness. Nevertheless, the relevance of the hundreds of photographs remains at issue. Photographs of the Plaintiff enjoying regular activities, which "simply depict Plaintiff in poses or stances and positions in which she placed herself after the accident," as Defendant stated, have little relevance to the ultimate issues in this matter, though they may have

9

some impeachment value. Though the photographs may have little probative value as the Plaintiff suggests, the photographs also lack unfair prejudice. Because at least some photographs may establish facts relating to the determination of loss of earning capacity and loss of enjoyment of life, the Court will allow the Defendants to introduce ten (10) photos of the entirety of the exhibits listed in these motions. Furthermore, any "comments" below the photo are out of court statements and as such shall be excluded from the exhibits.

**B. Motion in Limine to Exclude Evidence of Plaintiff's Financial Status, Gifts, Inheritance, Etc. (R. Doc. 189), and Motion in Limine to Exclude Admissibility or Reference to Plaintiff's Income Tax returns or Lack Thereof (R. Doc. 196)**

In the first motion, Plaintiff seeks to exclude any evidence related to (1) Plaintiff's income from her family's business; (2) any gifts Plaintiff received from her mother or any other person; and (3) any of Plaintiff's potential inheritance from her mother or any other person. (R. Doc. 189). Plaintiff argues that such evidence is not relevant and unfairly prejudicial. Defendants counter that this evidence is relevant as it demonstrates sources of "alternate income" apart from the income she earned as an employee of her family's business, which is relevant to her loss of earning capacity claim. In her second motion, Plaintiff argues that any reference to Plaintiff's income tax returns or lack thereof is likewise irrelevant and prejudicial to the Plaintiff. Defendants argue that tax returns are relevant in establishing gross income prior to and after the accident occurred, particularly as the law requires individuals to file income tax returns based on a minimum amount of income.

Central to both of these motions is whether evidence related to the Plaintiff's income is admissible in relation to her loss of earning capacity claim. Though the Federal Rules of Evidence governs the admissibility of the evidence, which requires relevance, Louisiana's law on

the loss of earning capacity informs the determination of the legal sufficiency of the evidence. This Court has once examined Louisiana's law on earning capacity in the context of this case and will not undertake an extensive review here; rather, the Court finds the following summary by the Louisiana Supreme Court sufficient for purposes of these motions:

> In *Folse v. Fakouri,* 371 So.2d 1120 (La.1979), this court recognized that in determining an award for loss of earnings and earning capacity, what the plaintiff earned before and after the injury does not constitute the measure. *While plaintiff's earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn.* Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury. Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.

*Hobgood v. Aucoin*, 574 So. 2d 344, 346 (La. 1990)(emphasis added). Although not required to demonstrate loss of earning capacity, Louisiana courts have allowed evidence of past income as proof of the claim. *See id.*; *see, e.g., Finnie v. Vallee,* 620 So.2d 897, 900 (La.App. 4th Cir.), *writ den.* 625 So.2d 1040 (La.1993)(earnings prior to accident relevant but not necessary); *Philippe v. Browning Arms Company,* 395 So.2d 310 (La.1980)(income prior to and subsequent to accident compared in evaluating earning capacity); *cf. Jordan v. Travelers Ins. Co.,* 257 La. 995, 245 So.2d 151 (1971)(income and tax return information not necessary to demonstrate loss of earning capacity). Thus, Louisiana law is clear that evidence related to an individual's income is relevant to the determination of loss of earning capacity. Any information relating to Plaintiff's income is relevant and admissible under Federal Rule of Evidence 402. However, any "alternate" or unearned income in the form of gifts, donations, or expected inheritance, as discussion by Plaintiff's motion, will not assist the fact finder in making a determination of the loss of the Plaintiff's *capacity* to earn and are not relevant. Thus, this evidence shall be excluded.

As to the Plaintiff's section motion, Louisiana courts and federal courts alike have considered tax returns relevant to the analysis of loss of earning capacity. *See* Bell states that it is the single best source of income. *Hoskin v. Plaquemines Parish Gov't*, 97-0061 (La. App. 4 Cir. 12/1/97), 703 So. 2d 207, 214 (La. Ct. App. 1997) *writ denied*, 98-0270 (La. 4/3/98), 717 So. 2d 1129 and writ denied, 98-0271 (La. 4/3/98), 717 So. 2d 1129; *Bell v. New Hampshire Ins. Co.*, No. CIV.A. 07-138, 2008 WL 2308824, at *4 (E.D. La. June 3, 2008). However, the fact that a tax return may be relevant is not the question presented here: it is whether information as to the lack of introduction of the *lack* of tax return is relevant. While Louisiana considers tax return information relevant in that it helps establish the income prior to loss, the absence thereof should not be a consideration here. Plaintiff is not on trial for her failure to file federal tax returns. *See Bell,* 2008 WL 2308824, at *5 ("While Defendant correctly points out that 26 U.S.C. 1402(b) requires a self-employed person to file a federal income tax return if his annual income exceeds $400, Plaintiff is not presently on trial for a violation of this federal law."). While the fact that Plaintiff may not have filed a tax return may suggests that she potentially earned less than the amount necessary to require it, it may also suggest that she improperly failed to file it. Thus, evidence of the absence of this filing creates issues of prejudice to the Plaintiff that outweigh the benefit of establishing income. *See* Fed. R. Evid. 403. Plaintiff has other sources of evidence that may establish her income under Louisiana law, and the Court finds any evidence of the Plaintiff's lack of filing of a tax return shall be excluded. To the extent that Defendants intend to offer evidence of a tax return filed by the Plaintiff, this evidence will be deemed admissible.

In sum, the Defendants may introduce evidence of tax returns and may inquire as to the Plaintiff's income for any year where no tax return was filed; however, Defendants may not make reference to the Plaintiff's failure to file a tax return.

Accordingly,

**IT IS ORDERED** that:

(1) the Defendant's Motion in Limine to Exclude Evidence and Testimony Regarding Surgical Procedures Video (R. Doc. 181) is **GRANTED;**

(2) the Defendant's Motion in Limine to Exclude Plaintiff's Evidentiary Exhibits (R. Doc. 182) is **DENIED,** subject to the limitations discussed above**;**

(3) the Defendant's Motion in Limine to Exclude Evidence and Testimony of Officer Alan Seaton and Accident Report (R. Doc. 185) is **GRANTED in part** and **DENIED in part,** subject to the limitations discussed above;

(4) the Plaintiff's Motion in Limine to Exclude All Electronic Evidence (R. Doc. 188) is **GRANTED in part** and **DENIED in part,** subject to the limitations discussed above;

(5) the Plaintiff's Motion in Limine to Exclude Facebook Postings (R. Doc. 195) is **GRANTED in part** and **DENIED in part**, subject to the limitations discussed above;

(6) the Plaintiff's Motion in Limine to Evidence of Plaintiff's Financial Status (R. Doc. 196) is **GRANTED in part** and **DENIED in part**, subject to the limitations discussed above; and

(7) the Plaintiff's Motion in Limine to Exclude Admissibility or Reference to Plaintiff's Income Tax Returns or Lack Thereof (R. Doc. 195) is **GRANTED in part** and **DENIED in part**, subject to the limitations discussed above.

New Orleans, Louisiana, this 5th day of March, 2015.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**